UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| PIERRE L PERKINS #104346 | CIVIL ACTION NO. 21-cv-151 SEC P |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| POLICE JURY BOSSIER PARISH ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Pierre L. Perkins ("Plaintiff"), a self-represented inmate, filed this civil rights action based on allegations that while housed in a Bossier Parish jail he did not receive proper protection from the coronavirus and received inadequate care after he contracted Covid-19. Two of the defendants, Lt. Jason Porter and Sgt. Jason Gates, previously filed a motion for summary judgment, and the undersigned issued a Report and Recommendation (Doc. 24) that recommended the claims against those defendants be dismissed because Plaintiff failed to exhaust his administrative remedies before filing suit against them. Now before the court is a Motion for Summary Judgment (Doc. 22) by the other two defendants, Nurse Cyndi Holley and the Bossier Parish Police Jury ("BPPJ"). The motion was noticed for briefing, but Plaintiff did not file any response. For the reasons that follow, it is recommended that the motion be granted and that all remaining claims be dismissed with prejudice.

**The Complaint**

Plaintiff was a pretrial detainee housed at the Bossier Max facility during the relevant time. He alleged in his complaint that he entered the facility on October 6, 2020, a time when the governor and health organizations were recommending masks, hand sanitizer, and social distancing. Plaintiff alleges that Lt. Porter did not issue him a mask and "warehoused" inmates with two or three to a cell.

Plaintiff alleged that between December 1 and December 21, 2020, seven inmates were tested by Head Nurse Cyndi Holley, and all seven tested positive for Covid-19. Plaintiff alleged that multiple inmates were not tested because their temperature did not reach 101 degrees, even though they had "all the other symptoms of Covid 19." Nurse Holley allegedly responded, "Not enough test and not enough funds."

Plaintiff's complaint includes allegations about Defendants Gates and Porter and how they managed the F-pod, but those allegations need not be reviewed in detail to address the claims against these defendants. Plaintiff alleges that during the month of December 2020, which he says was the height of sickness in F-pod, the BPPJ refused to lower the number of inmates in the pod, remove sick inmates, or close the jail and clean it to contain the sickness. Plaintiff alleged that between December 8 and December 26 Lt. Porter made sure anyone leaving F-pod was quarantined if they were moved to another building. Plaintiff contends that this shows that Porter and the BPPJ "knew everyone was infected."

Plaintiff also included allegations specific to his medical care. He alleged that he was seen by Nurse Holley on December 14 and 16, 2020 and that she told him that his problem "wasn't anything major, even though I was spitting up blood." Plaintiff alleged

that he was rushed to the emergency room at LSU Health on December 31, 2020 due to shortness of breath and spitting up blood. Plaintiff contends the physician on duty "confirmed that I had damage on my lungs that came from Covid 19." CT scans allegedly showed quarter-sized cysts on Plaintiff's lungs, along with scarring and damage. Plaintiff contends that he was referred to a respiratory therapist.

Plaintiff retuned to Bossier Max. He alleges that he saw Nurse Holley on January 10, 2021, but she did not know about his visit to LSU, his alleged appointment with a respiratory specialist, and findings of lung damage. Plaintiff concedes that Holley did say she would look into it, but he contends this constituted medical neglect and deliberate indifference.

**Pretrial Detainee and Medical Claims**

Plaintiff was a pretrial detainee during the relevant time. "The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020), quoting Thompson v. Upshur Cty., Tex., 245 F.3d 447, 457 (5th Cir. 2001). To succeed on a deliberate-indifference claim, a plaintiff must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference. Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 755 (5th Cir. 2001). "Deliberate indifference is an extremely high standard to meet." Id. at 756.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Defendants' Summary Judgment Evidence**

The BPPJ represents that it provides medical care for inmates at Bossier Max. Nurse Holley testifies in an affidavit that she is a registered nurse and has worked in the medical unit at Bossier Max since August 2018. She testifies that the facility generally houses between 400 and 430 inmates, but the maximum population is approximately 545 inmates. Most are pretrial detainees, but some are convicted DOC prisoners.

Nurse Holley testifies that in December 2020 the medical unit at Bossier Max consisted of six full time staff that included herself and five LPNs. The BPPJ also

employed eight to ten part-time employees, including one LPN and several paramedics, at the relevant time. BPPJ also contracted with Dr. Vincent Lococo, a licensed physician, to provide medical services to inmates at Bossier Max.

All inmates are subjected to a medical intake screen and are given an explanation of the process for submitting a written medical attention request or "kite" to the medical unit. Sick call and pill call are each conducted twice a day, and Dr. Lococo conducts a twice-weekly clinic to treat inmates.

Nurse Holley testifies that at the beginning of the Covid-19 pandemic, BPPJ personnel at Bossier Max put into place a set of policies specific to Covid-19 to mitigate its spread. The policies were developed after consulting the Centers for Disease Control guidelines. The medical unit provided education to the inmates regarding the importance of wearing masks, and masks were provided by the sheriff. The medical unit also provided masks upon request. The medical unit gave a set of written recommendations to the sheriff regarding inmate precautions, and inmates were instructed to submit a kite if they experienced any of several listed symptoms of Covid-19. Dr. Lococo set forth the applicable rules and safeguards in a standing order.

Nurse Holley testifies that the standard in place for an inmate to be tested for Covid-19 required both (1) a fever equal to or greater than 100.3 degrees and (2) at least one other symptom of Covid-19 (e.g., cough, shortness of breath, body aches, or malaise). Holley states that there was "never a shortage of funding" for tests, and inmates who met the standard were tested regardless of the cost of the test. Plaintiff was among a group of

inmates tested by Ochsner LSU Health Shreveport's Covid-19 strike team on December 26, 2020. The test came back negative.

Nurse Holley also addresses Plaintiff's allegations of health problems related to spitting up blood. Plaintiff was seen by the medical staff and Dr. Lococo several times to monitor and address his symptoms regarding bloody stools and coughing up blood. Plaintiff was also seen at Ochsner LSU Health Shreveport numerous times and received follow-up care from medical staff at Bossier Max. Nurse Holley attaches Plaintiff's extensive medical records from his time at Bossier Max between October 2020 and September 2021. The records are summarized in detail at Doc. 22-3, pages 5-11. They show that Plaintiff was given stool softener twice a day to address his constipation, prescribed Omeprazole related to his history of gastric ulcers, and was routinely seen by medical staff for everything from monthly weight checks to particular health complaints.

Plaintiff went to the hospital on December 31, 2020 due to complaints of dark stools containing blood. The hospital ran labs, an EKG, CTA, and chest x-ray. The test revealed granulomas in the lungs, and the diagnoses included pulmonary granuloma. Plaintiff was discharged back to the custody of Bossier Max with a prescription for medication, but there was nothing in the records from this visit of any diagnosis of Covid-19. Rather, Plaintiff had tested negative for Covid-19 just days earlier on December 26, 2020.

Among the other extensive medical care afforded Plaintiff was an EGD and colonoscopy in May 2021. The Johnson & Johnson Covid-19 vaccine was made available to inmates in March 2021.

**Analysis**

The summary judgment evidence submitted by Nurse Holley and the BPPJ undermine all of Plaintiff's claims. Plaintiff alleged that Nurse Holley and the BPPJ were negligent or indifferent with respect to the management of the jail and F-pod in particular, but the summary judgment evidence shows that a specific plan was put in place and followed. That plan was based on government guidelines and adopted in a standing order issued by Dr. Lococo. Plaintiff was tested for Covid-19, and the result was negative. Later scans at the hospital did indicate lung problems, but there is no hint that it was due to Covid-19 or any lack of care afforded by the jail medical staff. Plaintiff was also seen and treated repeatedly for his other medical problems, which appeared to have been fairly well controlled near the end of his stay.

To prevail on his due process claim, Plaintiff has to demonstrate deliberate indifference to a serious medical need. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle v. Gamble, 97 S.Ct. 285, 291-92 (1976). Plaintiff may have been unhappy with some of the treatment he was given, but disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). Neither unsuccessful medical treatment, mere acts of negligence, nor medical malpractice give rise to deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006).

Plaintiff filed his complaint on a form that specifically states it is for asserting civil rights claims under 42 U.S.C. § 1983. His allegations occasionally mentioned medical

malpractice and negligence so, apparently out of an abundance of caution, defendants have addressed potential state law claims in their motion for summary judgment. The court does not interpret the complaint to assert such state law claims but, if they are alleged, summary judgment with respect to those claims is also warranted. The evidence discussed above does not include a genuine dispute of material fact regarding a potential claim for medical malpractice or other state law negligence. Summary judgment is thus warranted with respect to any state law claims without the need to discuss the particular immunity statutes invoked by the defendants.

Accordingly,

It is recommended that the Motion for Summary Judgment (Doc. 22) be granted and that all claims against Cyndi Holley and the Bossier Parish Police Jury be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of November, 2021.

Mark L. Hornsby
U.S. Magistrate Judge